IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HARRIET FORESTIERI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 18-1171 (MN) |
| ) | |
| WENDOVER, INC. ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Daniel C. Herr, LAW OFFICE OF DANIEL C. HERR LLC, Wilmington, DE 19801; Neelima Vanguri, Sidney L. Gold, SIDNEY L. GOLD & ASSOCIATES, P.C., Philadelphia, PA – attorneys for Plaintiff

Kevin A. Guerke, BAIRD MANDALAS BROCKSTEDT, LLC, Wilmington, DE – attorneys for Defendant

April 24, 2019
Wilmington, Delaware

*[signature: Maryellen Noreika]*

**NOREIKA, U.S. DISTRICT JUDGE**:

Before the Court is a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), filed by Defendant Wendover, Inc. ("Defendant" or "Wendover") (D.I. 10), alleging that Plaintiff Forestieri's ("Plaintiff" or "Forestieri") First Amended Complaint ("Amended Complaint") (D.I. 9) fails to state a claim upon which relief can be granted. Plaintiff opposes the motion. For the reasons set forth below, Defendant's motion to dismiss the Amended Complaint will be granted-in-part and denied-in-part.

## I.    BACKGROUND

Plaintiff filed her original Complaint on August 3, 2018. (D.I. 1). On September 20, 2018, Defendant moved to dismiss that Complaint. (D.I. 7). In lieu of responding to the motion, Plaintiff filed an Amended Complaint on October 10, 2018. (D.I. 9). The Amended Complaint asserts violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C.§ 12101, *et. seq*., the Age Discrimination in Employment Act, ("ADEA"), 29 U.S.C. §621 *et seq*., and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. 2601, *et seq*. (*Id.* ¶ 2).

Forestieri, a sixty-nine-year-old individual, was employed by Defendant from 1999 until October of 2016. (*Id.* ¶ 9). The Amended Complaint alleges that throughout her employment with Defendant, she "held the position of General Manager and at all times maintained a satisfactory job performance rating." (*Id.* ¶ 10). Plaintiff alleges that on May 24, 2016, she fell at her home and suffered a wrist facture, which led to difficulties "lifting, grasping, performing manual tasks, and musculoskeletal function[ing]." (*Id.* ¶ 11). Plaintiff alleges that she contacted her supervisor, Frank Germann ("Germann") "to inquire about disability leave" and to inform him that "she would not be able to work for the next three (3) to four (4) months." (*Id.* ¶ 13). She alleges that Germann instructed her "to take the time off to allow her injury to properly heal." (*Id.*) Plaintiff further

1

alleges that during her leave she remained in contact with her supervisor and "at all times expressed her intent to return to work as soon as she was medically cleared to do so." (*Id.* ¶ 16). On September 2, 2016, Plaintiff informed Germann that she would be able to return to work around September 26, 2016. (*Id.* ¶ 17). The Amended Complaint alleges "[f]or the period of time that Plaintiff required additional leave beyond her FMLA leave, she requested the same as a reasonable accommodation for her disability." (*Id.*). On September 21, 2016, Plaintiff was approved by her doctor to return to work on September 26, 2016 without restriction. (*Id.* ¶ 18). Plaintiff returned to work on September 26, 2016. (*Id.* ¶ 19).

The Amended Complaint alleges that, upon returning to work, Plaintiff met with "Rob Beaver ("Beaver"), Vice-President, and Gerald Hoffner ("Hoffner"), Regional Director," at which time she was informed that she would be demoted to the role of assistant manager and that her salary would decrease from $65,000 to $35,000. (*Id.* at ¶ 20). Plaintiff alleges that Beaver explained the change was because Plaintiff "had been out for a while and [he was] concerned that [she] will not be able to perform the job because when [Beaver] came back to Wendy's [he] had a hard time and [she] was older than [him]." (*Id.*). Plaintiff further alleges that Beaver stated that "we weren't even sure you [Plaintiff] were coming back because there was no communication from you." (*Id.* ¶ 22). Plaintiff alleges that Beaver told her that she would be replaced by Anthony Kemsky ("Kemsky") – an Assistant Manager, who was "a similarly-situated, significantly younger, non-disabled individual" – and that she would be transferred to the University Plaza Wendy's location. (*Id.* ¶¶ 20-21).

The Amended Complaint alleges that Plaintiff reported to the University Plaza Wendy's location on October 3, 2016 and "expressed concern to Beaver that she had not been formally trained to use the newly renovated facility." (*Id.* ¶ 23). Plaintiff alleges that Beaver "voiced

apprehension that Plaintiff Forestieri would not be able to complete work related tasks because of her age." (*Id.*). Plaintiff further alleges that, on October 6, 2016, Beaver and Hoffner called Plaintiff into a meeting and again "expressed concern that Plaintiff Forestieri would not be able to do her job because of her age and her time off related to her disability." (*Id.* ¶ 24).

The Amended Complaint contends that "Forestieri believes and therefore avers that the Defendant demoted Plaintiff Forestieri on the basis of her age (69), her actual and/or perceived disability and/or record of impairment (Wrist Fracture, Nerve Damage), and/or in retaliation for Plaintiff Forestieri's requests for reasonable accommodations." (*Id.* ¶ 25). Plaintiff alleges she was unlawfully terminated on October 5, 2016. (*Id.* ¶ 9).

## II. <u>LEGAL STANDARD</u>

When presented with a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), district courts conduct a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the Court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210-11. Second, the Court determines "whether the facts alleged in the complaint are sufficient to show . . . a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Dismissal under Rule 12(b)(6) is appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also*

*Fowler*, 578 F.3d at 210. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court is not obligated to accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997). Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

## III. DISCUSSION

### A. Count 1: ADA – Actual and/or Perceived Disability and/or Record of Impairment Discrimination, Retaliation

"[T]o establish a prima facie case of discrimination under the ADA, the plaintiff must show: (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) (quoting *Gaul v. Lucent Technologies*, 134 F.3d 576, 580 (3d Cir. 1998)). Here, Plaintiff alleges that Defendants violated the ADA by "subjecting Plaintiff Forestieri to unlawful discrimination on the basis of her actual and/or perceived and/or record of impairment (Wrist Fracture, Nerve Damage),[1] failing to accommodate Plaintiff Forestieri, failing to engage in the interactive process with

---

[1] Multiple times Plaintiff refers to her impairment with the parenthetical "wrist facture, nerve damage," but there are no allegations or facts describing any purported nerve damage.

Plaintiff Forestieri, and retaliating against Plaintiff Forestieri for requesting a reasonable accommodation." (D.I. 9 ¶ 27)

    1.    Disability

Under the ADA, "[a] 'disability' is defined as: '(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment.'" *Taylor,* 184 F.3d at 305-06 (citing 42 U.S.C. § 12102(2)). Here, Plaintiff has not alleged facts necessary to state a plausible claim under any of these formulations.

The Amended Complaint does not sufficiently allege that Plaintiff has a physical or mental impairment that substantially limits any of her major life activities. "A 'temporary non-chronic impairment of short duration is not a disability covered by the [Acts].'" *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d Cir. 2012) (quoting *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 380 (3d Cir. 2002)). Courts have found that durations of four and seven months are not of sufficient duration to qualify as an ADA disability. *See e.g., id.* at 274-75; *Colwell v. Suffolk County Police Dept.*, 158 F.3d 635, 646 (2nd Cir. 1998). Here, Plaintiff alleges that she injured her wrist on May 24, 2016 and "was approved by her doctor to return to work full time ***with no restrictions*** on September 26, 2016." (D.I. 9 ¶¶ 11, 18) (emphasis added). She does not allege that her wrist injury caused physical impairment after she was cleared by her doctor, or that it was a long-term or chronic injury. Thus, Plaintiff's four-month impairment, which concluded when her own doctor cleared Plaintiff to return to work without restriction, is not a physical impairment under the ADA.

Moreover, "Congress included 'record of' disability claims in the ADA to ensure that employees could not be subjected to discrimination because of a recorded history of disability." *Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 436–37 (3d Cir. 2009). "A plaintiff attempting to

5

prove the existence of a 'record' of disability still must demonstrate that the recorded impairment is a 'disability' within the meaning of the ADA." *Tice v. Ctr. Area Transp. Auth.*, 247 F.3d 506, 513 (3d Cir. 2001). In *Eshelman*, the Third Circuit stated, "if the record at issue does not reference a disability or condition covered by the ADA, [Defendant] is not liable even if it did rely on that record in making the adverse employment decision." 554 F.3d at 437. Here, where Plaintiff's four-month wrist injury is not a disability under the ADA, she cannot state a record of impairment claim upon which relief may be granted.

Finally, the Amended Complaint does not sufficiently allege that Plaintiff was regarded by Defendant as disabled. "An individual meets this 'regarded as' requirement if he or she establishes that he or she has been subject to an action the ADA prohibits 'because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.'" *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 259 (3d Cir. 2014) (quoting 42 U.S.C. § 12102(3)(A)). "The statute curtails an individual's ability to state a 'regarded as' claim if the impairment is 'transitory and minor,' which means it has an 'actual or expected duration of six months or less.'" *Id.* (citing § 12102(3)(B)). While a Defendant may not ordinarily raise an affirmative defense – like transitory and minor impairment[2] – at the motion to dismiss

---

[2] 29 C.F.R. § 1630.15(f) (stating under defenses those "[c]laims based on transitory and minor impairments under the 'regarded as' prong. It may be a defense to a charge of discrimination by an individual claiming coverage under the 'regarded as' prong of the definition of disability that the impairment is (in the case of an actual impairment) or would be (in the case of a perceived impairment) 'transitory and minor.' To establish this defense, a covered entity must demonstrate that the impairment is both 'transitory' and 'minor.' Whether the impairment at issue is or would be 'transitory and minor' is to be determined objectively. A covered entity may not defeat 'regarded as' coverage of an individual simply by demonstrating that it subjectively believed the impairment was transitory and minor; rather, the covered entity must demonstrate that the impairment is (in the case of an actual impairment) or would be (in the case of a perceived impairment) both transitory and minor. For purposes of this section, 'transitory' is defined as lasting or expected to last six months or less.").

6

stage, such a defense may be considered "if the defense is apparent on the face of the complaint." *Id.* (citing *Ball v. Famiglio*, 726 F.3d 448, 459 n.16 (3d Cir. 2013)). Here, as discussed above, the Amended Complaint alleges that Plaintiff's impairments lasted four months at which time she was medically cleared to return to work without restrictions. Based on the time to recover and the nature of her injury, this impairment was objectively transitory and minor. *See id.* (referring an approximately two month-long recovery from a broken hand "objectively transitory and minor"). The Amended Complaint, moreover, includes no plausible allegations that Defendant treated Plaintiff's wrist injury as anything more than a minor and transitory injury that would keep her from work for a few months. (*See* D.I. 9 ¶ 13 ("Plaintiff Forestieri informed Germann that, per her doctor's orders, she would not be able to work for the next three (3) to four (4) months. Germann instructed Plaintiff Forestieri to take the time off to allow her injury to properly heal.")). Because Plaintiff has not sufficiently pleaded facts to show she is disabled under any formulation of the definition in the ADA, she has failed to state a plausible claim for relief thereunder.

    2.    Accommodation

To the extent that Plaintiff alleges that Defendant failed to accommodate her disability, she has again failed to state a claim. An employer commits unlawful discrimination under the ADA if the employer does "not mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." 42 U.S.C. § 12112(b)(5)(A). A failure to accommodate claim requires a plaintiff to show "'(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse

employment decision as a result of discrimination' . . . [which] in this context include[s] refusing to make reasonable accommodations for a plaintiff's disabilities." *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 186-87 (3d Cir. 2009) (quoting *Williams v. Phila. Housing Auth. Police Dep't*, 380 F.3d 751, 761 (3d Cir. 2004)). Here, Plaintiff cannot state a failure to accommodate claims because, as discussed above, Plaintiff has failed to make a plausible showing that she is a disabled person within the meaning of the ADA. Even accepting, *arguendo*, however, that Plaintiff is disabled under one of the three categories expounded above, she has failed to make a showing that Defendant refused to make a reasonable accommodation.

First, Plaintiff has not plausibly alleged that Defendant refused to accommodate her wrist injury. The Third Circuit has made clear that an individual must put a covered employer on notice of a request for an accommodation, stating "while the notice [of a desire for an accommodation] does not have to be in writing, be made by the employee, or formally invoke the magic words 'reasonable accommodation,' the notice nonetheless must make clear that the employee wants assistance for his or her disability." *Jones v. United Parcel Serv.*, 214 F.3d 402, 408 (3d Cir. 2000) (quoting *Taylor*, 184 F.3d at 313). Plaintiff's sole allegation regarding accommodation states, in its entirety, that "[f]or the period of time that Plaintiff required additional leave beyond her FMLA leave, she requested the same as a reasonable accommodation for her disability." (D.I. 9 ¶ 17). Plaintiff's conclusory assertion is insufficient to state a plausible claim that she made clear to the Defendant that she required assistance for any disability or that Defendant then refused to grant that request. Thus, Plaintiff cannot maintain a claim under the ADA for failure to accommodate.[3]

---

[3] Similarly, Plaintiff's allegations that Defendant failed to engage in an interactive process for a reasonable accommodation and retaliated against Plaintiff for requesting a reasonable accommodation – both being premised on a request for reasonable accommodation – also fail.

Plaintiff also cannot claim failure to accommodate pursuant to a "regarded as" definition of disability. The 2008 Amendments to the ADA added a provision which provides that employers "need not provide a reasonable accommodation . . . to an individual who meets the definition of disability in [Section 12102(1)(C): "regarded as having an impairment"]." 42 U.S.C. § 12201(h); *see also Robinson v. First State Cmty. Action Agency*, --- F.3d ---, 2019 WL 1431924, at *3 (3d Cir. Apr. 1, 2019) ("an individual who demonstrates that she is 'regarded as' disabled, but who fails to demonstrate that she is actually disabled, is not entitled to a reasonable accommodation."). Thus, to the extent that Plaintiff alleges a failure to accommodate based on a "regarded as" definition of disability, her claim is prohibited and does not state a claim upon which relief may be granted.

For the above reasons, Defendant's motion to dismiss Count I of the Amended Complaint will be granted.

### B. <u>Count 2: ADEA – Age Discrimination</u>

"As applied to ADEA cases, the plaintiff establishes a prima facie case by showing that (1) he is over 40, (2) he is qualified for the position in question, (3) he suffered an adverse employment decision, and (4) he was replaced by a sufficiently younger person to create an inference of age discrimination." *Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir. 1995) (citing *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 897 (3d Cir. 1987)). Here, Plaintiff sufficiently alleges that she meets the first and second elements stated above. She alleges that she is 69 years old[4] and that she held the position of "General Manager" for more than sixteen years, where she "maintained a satisfactory job performance rating." (D.I. 9 ¶¶ 9-10).

---

[4] Though it is not entirely clear whether Plaintiff was 69 years old at the time of the alleged discrimination or when she filed this case two years later, the issue is immaterial as both are above the threshold required for an ADEA claim.

Though a closer call, the Court also finds that Plaintiff has sufficiently pleaded facts to plausibly state an adverse employment decision. The Third Circuit has defined an adverse employment decision as "an action that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'" *Budhun*, 765 F.3d at 257 (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997)). Here, the Amended Complaint alleges that Plaintiff suffered adverse employment decisions when (1) she was removed from her general manager job and transferred to an assistant manager position at a separate location and (2) upon her "unlawful termination."[5] (D.I. 9 ¶¶ 9, 20). More specifically, Plaintiff alleges that she was demoted to a lesser position and her salary was decreased from $65,000 to $35,000. (*Id.* ¶ 20).

Defendant argues that Plaintiff cannot show an adverse employment actions because "[t]he FMLA does not require Wendover to protect Plaintiff's job beyond 12 weeks." (D.I. 11 at 8). In support of this contention, Defendant cites a nonprecedential Third Circuit opinion which states "[i]f the employee is not able to return to work after twelve weeks, however, the employer may terminate the employee." *See Katekovich v. Team Rent A Car of Pittsburgh, Inc.*, 36 F. App'x 688, 690 (3d Cir. 2002). A number of district courts in this circuit, however, have not applied *Katekovich* as a bar to FMLA retaliation suits when a Plaintiff could not immediately return to work after FMLA leave. *See McDonald v. SEIU Healthcare Pennsylvania*, No. 13-2555, 2014 WL 4672493, at *16 n.21 (M.D. Pa. Sept. 18, 2014) (stating "a plaintiff's ability to state a

---

[5] Plaintiff's allegation that she was "unlawfully" terminated is largely conclusory and unsupported by any facts. Though the Court must accept all of the Amended Complaint's well-pleaded facts as true, it must also disregard any legal conclusions. Calling the end of her employment an "unlawful termination," without any facts is insufficient to state an adverse employment decision with respect to any purported termination.

retaliation claim does not depend on her ability to return to work" and citing numerous district court cases after *Katekovich*).

Moreover, in *Budhun*, the plaintiff took approved FMLA leave followed by a period of non-FMLA leave, after which, she was replaced by another employee. 765 F.3d at 257. After the district court granted a summary judgment in favor of defendant – partly because of Plaintiff's inability to return to work at the conclusion of the FMLA leave period – the Third Circuit reversed, holding that the plaintiff could be found to have suffered an adverse employment action. *Id.* at 257-58. So too, here, Plaintiff alleges that upon her return to work, she was informed that she had been demoted and replaced by the former assistant manager. Applying the rationale of *Budhun*, the Court finds that Plaintiff has alleged an adverse employment action with respect to her demotion. At this stage in the proceedings, the allegations of demotion from general manager to assistant manager and a pay cut of $30,000 are sufficient to plead an adverse employment decision.

Finally, although the Amended Complaint meets the first three elements of an ADEA claim, it fails to plead that Plaintiff was replaced by a sufficiently younger person to create an inference of age discrimination by Defendant. The Amended Complaint contends that Plaintiff was informed that "she would be replaced by Kemsky, a similarly-situated, **significantly younger**, non-disabled individual." (D.I. 9 ¶ 20) (emphasis added). Whether a person is "sufficiently younger" is a factual question based in the age difference between Plaintiff and her replacement. *See Maxfield v. Sinclair Int'l*, 766 F.2d 788, 793 (3d Cir. 1985) (holding "replacement by an employee more than 20 years younger was sufficient" to establish the fourth element of the prima facie test.); *Healy v. N.Y. Life Ins. Co.*, 860 F.2d 1209 (3d Cir. 1988) (holding a nine-year age difference was sufficient to establish the prima facie case of age discrimination); *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 699 (3d Cir. 1995) (holding an eight-year difference between plaintiff

and person hired as replacement could support a finding that the person hired for the job at issue was sufficiently younger than the plaintiff); *but see Lloyd v. City of Bethlehem,* No. 02-830, 2004 WL 540452, at *6 (E.D. Pa. Mar. 3, 2004) (stating "[t]he caselaw in this Circuit consistently holds that an age gap of less than five years is, as a matter of law, insufficient to establish fourth element of the prima facie test."). When a plaintiff fails to allege the age of a replacement, courts in this circuit have found that a complaint cannot raise an inference of age discrimination. *See Andras v. Borough of Laceyville, Pa*., No. 14-2094, 2015 WL 4488359, at *5 (M.D. Pa. July 23, 2015); *Klikus v. Cornell Iron Works, Inc*., No. 13-468, 2014 WL 496471, at *5 (M.D. Pa. Feb. 6, 2014) ("plaintiff's amended complaint fails to establish an inference of age discrimination because plaintiff has failed to allege the age of his replacement").

Here. Plaintiff alleges nothing about Kemsky beyond the bald allegation that he is "significantly younger." Simply reciting language mimicking the fourth element of a prima facie case for an ADEA claim is insufficient to meet the pleading standards. Thus, the Court finds that Plaintiff has failed to plead a plausible claim of age discrimination against Defendant. Defendant's motion to dismiss Count II will be granted.

### C. Count 3: FMLA

To state a claim for retaliation under FMLA, Plaintiff must allege that (1) she took FMLA leave, (2) she suffered an adverse employment decision, and (3) the adverse decision was casually related to her leave. *See Conoshenti v. Pub. Serv. Elec. & Gas Co*., 364 F.3d 135, 146 (3d Cir. 2004). Plaintiff alleges that, after her May 24, 2016 injury, she inquired with her supervisor about disability leave and was told to take time off to "allow her injury to properly heal." (D.I. 9 ¶¶ 11, 13). Plaintiff remained on leave until September 26, 2016. (*Id.* ¶¶ 17, 19). These facts sufficiently plead the first element of an FMLA retaliation claim. As discussed above, the Amended Complaint

has also sufficiently pleaded an adverse employment decision via her removal from the general manager position and reduction in pay following her FMLA leave.

Thus, the remaining question is whether the Amended Complaint pleads causality between her FMLA leave and the adverse employment decisions. The Court finds that it does. The Amended Complaint alleges that Beaver, on September 26, 2016, informed Plaintiff that her demotion and salary decrease were due to the fact that she "had been out for a while," and that on October 6, 2016, Beaver reiterated his concern that Plaintiff "would not be able to do her job because of her age and her time off related to her disability." (D.I. 9 ¶¶ 20, 24). These allegations link Plaintiff's adverse employment actions with the fact that she took protected FMLA leave and are sufficient, at this stage, to raise a plausible claim for relief.

Defendant's motion to dismiss Count III will be denied.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (D.I. 10) is GRANTED-IN-PART and DENIED-IN-PART. An appropriate order will follow.